IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SANDRA B.,

              Plaintiff,

          v.                              Civil Action No.
                                         3:23-cv-580 (DEP)

MARTIN J. O'MALLEY,
Commissioner of Social Security
Administration,[1]

              Defendant.

_____

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY          CINDY DOMINGUE-HENDRICKSON, ESQ.
OF MID-NEW YORK, INC.
221 South Warren Street, Suite 310
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      VERNON NORWOOD, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

_____

[1]     Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2]  Oral argument was heard in connection with those motions on May 23, 2024, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is

_____

[2]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is GRANTED.

2)      The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)      The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:      May 29, 2024
            Syracuse, NY

3

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
SANDRA B.,

                         Plaintiff,

vs.                              5:23-CV-580

MARTIN J. O'MALLEY,
Commissioner of Social Security,

                         Defendant.

-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on May 23, 2024, the

HONORABLE DAVID E. PEEBLES, United States

Magistrate Judge, Presiding.



                    A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:      LEGAL AID SOCIETY OF MID-NEW YORK, INC.
                    Attorneys at Law
                    120 Bleecker Street
                    Utica, New York  13501
                      BY:  CINDY DOMINGUE-HENDRICKSON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    6401 Security Boulevard
                    Baltimore, Maryland  21235
                      BY:  VERNON NORWOOD, ESQ.


            *Jodi L. Hibbard, RMR, CSR, CRR*
          *Official United States Court Reporter*
                *100 South Clinton Street*
             *Syracuse, New York  13261-7367*
                    *(315) 234-8547*

1               (The Court and Counsel present by telephone.)

2          THE COURT:  Thank you.  Let me begin first of all

3     by thanking both counsel for excellent presentations in both

4     writing and orally today.  And Attorney Hendrickson, I

5     commend you, you did not write the brief in this case, you

6     withstood my questioning in fine fashion, and so my hat is

7     off to you.  Attorney Norwood always does a good job and I

8     commend him as well.

9          Before we get to the meat of my decision there is

10    one issue that I must address.  When this case was initially

11    filed, it was assigned to one of my colleague magistrate

12    judges, Judge Miro Lovric.  The consent form that was filed

13    and signed by Attorney Elizabeth Lombardi on behalf of

14    plaintiff on May 12, 2023 consented specifically to Judge

15    Lovric.  The matter has since been reassigned to me.  I'm

16    sorry to put you on the spot, Attorney Hendrickson, but do

17    you consent to my deciding this case as opposed to issuing a

18    report and recommendation to a district judge yet to be

19    named?

20         MS. HENDRICKSON:  Yes, I do, your Honor.

21         THE COURT:  Thank you.

22         The plaintiff has commenced this proceeding to

23    challenge an adverse determination by the Commissioner of

24    Social Security finding that she was not disabled at the

25    relevant times and therefore ineligible for the benefits

1    sought.  The matter is brought pursuant to 42 United States

2    Code Section 405(g) and 1383(c)(3).

3            The background is as follows:  Plaintiff was born

4    in July of 1974, she is currently 49 years of age.  Plaintiff

5    lives alone in an apartment.  It's a first floor apartment in

6    Oxford, New York.  She is 5 foot 8 inches in height and at

7    various times has weighed approximately 180 pounds.

8    Plaintiff does not have a driver's license although she did

9    at one time drive.  The evidence is somewhat equivocal as to

10   whether she is capable of taking public transportation.  At

11   the hearing she said no at page 44; in her function report

12   she said yes, that's at page 400.  Plaintiff has a high

13   school diploma and attended regular classes while in school.

14   Plaintiff stopped working in August of 2013.  The record is

15   equivocal and unclear as to whether it was due to her

16   impairments or to domestic violence issues.  While working,

17   she worked as a shipping and receiving clerk in a factory, an

18   administrative assistant, an assistant convenience store

19   manager, and an office worker.

20           Physically, plaintiff suffers from degenerative

21   disc disease of the cervical spine, degenerative joint

22   disease, bilateral, of shoulders, degenerative disc

23   disease -- I'm sorry, degenerative joint disease of the right

24   knee, obesity, and left foot pain.  With regard to the foot,

25   she underwent fusion surgery on her left foot in December of

1    2019.  She also has a history of bilateral shoulder issues

2    and has undergone four surgeries on her shoulder in the past,

3    bilateral knee pain, carpal tunnel syndrome, lumbar pain, and

4    has undergone, as I said, multiple surgeries.

5         Mentally, plaintiff suffers from conditions that

6    have been variously diagnosed, including as adjustment

7    disorder with anxiety, adjustment disorder with depressed

8    mood, personality disorder, opioid use disorder, stimulant

9    use disorder, methamphetamine use disorder, tobacco use

10   disorder, substance abuse in early remission.  There is also

11   mention at some point of post-traumatic stress disorder and

12   bipolar disorder.  Plaintiff apparently has had substance

13   abuse issues but claims to have been sober since March of

14   2019.

15        In terms of activities of daily living, plaintiff

16   is able to shower, dress, shop, do light meal preparation,

17   some laundry with the help of her daughter, she watches

18   television, listens to the radio, exercises, vacuums, can

19   walk up stairs, washes dishes, does yard work, and as I said,

20   she did drive and when she did drive, she drove her children

21   to and from school.

22        Procedurally, plaintiff applied for benefits

23   previously on May 1, 2014, that was denied on September 22,

24   2016, and the Social Security Administration Appeals Council

25   denied her application for review of that determination on

1    October 4, 2017.  Another application was filed on

2    November 23, 2017 and denied on June 24, 2019.  Plaintiff

3    protectively filed for Title II and Title XVI benefits on

4    July 26, 2019, alleging an onset date of August 25, 2013.

5    She claims to have been disabled based upon degenerative

6    disease of the right shoulder, meniscus tear, abnormal foot

7    growth, foot bone growth, arthritis of the neck, hands,

8    shoulder, foot, back, et cetera, torn rotator cuff, carpal

9    tunnel syndrome, post-traumatic stress disorder, depression,

10   and anxiety.  A hearing was conducted on July 13, 2021 by

11   Administrative Law Judge Elizabeth Koennecke to address

12   plaintiff's applications for benefits.  Another hearing was

13   conducted on October 6, 2021 at which time the testimony of a

14   vocational expert was elicited.  ALJ Koennecke issued an

15   unfavorable decision on October 15, 2021.  The Social

16   Security Administration Appeals Council denied plaintiff's

17   application for review of that decision on March 13, 2023.

18   This action was commenced on May 12, 2023 and is timely.

19        In her decision ALJ Koennecke initially denied any

20   explicit or implicit request by plaintiff to reopen the prior

21   proceedings, and therefore determined that the relevant

22   period for Title XVI benefits would be from June 25, 2019.

23   She also noted that plaintiff's last insured status was

24   December 31, 2018.

25        The ALJ applied the familiar five-step sequential

1   test for determining disability.

2        At step one she found that plaintiff had not

3   engaged in substantial gainful activity since August 25,

4   2013.

5        At step two she found that plaintiff does suffer

6   from severe impairments that impose more than minimal

7   limitations on her ability to perform basic work functions,

8   including mild degenerative disc disease of the cervical

9   spine, degenerative joint disease of the shoulders, and

10   degenerative joint disease of the right knee.  In arriving at

11   that finding, she noted other alleged impairments -- those

12   include a history of bone spurs in her left foot, carpal

13   tunnel syndrome, her low back pain complaints, obesity, and

14   her mental conditions as variously diagnosed -- and concluded

15   that they did not constitute severe impairments as plaintiff

16   argues.  At step two ALJ Koennecke did not specifically

17   address plaintiff's left knee condition.  She also addressed

18   plaintiff's heart condition which she found to be mild, and

19   in that regard, found the opinion of plaintiff's cardiologist

20   to be persuasive.

21        At step three, ALJ Koennecke found the plaintiff's

22   conditions do not meet or medically equal any of the listed

23   presumptively disabling conditions set forth in the

24   Commissioner's regulations, specifically considering Listings

25   1.15 and 1.17.  She then determined that notwithstanding her

1  impairments, plaintiff retains the residual functional

2  capacity, or RFC, to perform light work as defined in the

3  regulations except she can occasionally climb ramps or

4  stairs, ladders, ropes, or scaffolds and can occasionally

5  balance, stoop, kneel, crouch, or crawl.  She can

6  occasionally lift or reach overhead but has no other reaching

7  limitations.

8  Applying that RFC at step four, ALJ Koennecke

9  concluded that plaintiff is incapable of performing her past

10  relevant work and proceeded to step five where, with the

11  benefit of testimony from the vocational expert, she

12  concluded that plaintiff is capable of performing available

13  work in the national economy, citing as representative

14  positions those of cashier II, sales attendant, and

15  housekeeping cleaner.

16  As you know, the court's function in this case is

17  to determine whether correct legal principles were applied

18  and the resulting determination is supported by substantial

19  evidence, defined as such relevant evidence as a reasonable

20  mind would find sufficient to support a conclusion.  The

21  standard which the court must apply is extremely deferential,

22  as the Second Circuit has noted in *Brault v. Social Security*

23  *Administration Commissioner*, 683 F.3d 443, from 2012, and

24  more recently reiterated in *Schillo v. Kijakazi*, 31 F.4th 64

25  from 2022.  As the Second Circuit noted in *Brault*, what the

1    standard means is that once an ALJ makes a finding of fact,

2    that fact can be rejected only if no reasonable person would

3    have to reach that conclusion.  As I said before, it's a

4    deferential standard, more rigorous than the clearly

5    erroneous standard.  The exact quote is, "The substantial

6    evidence standard means once an ALJ finds facts, we can

7    reject those facts only if a reasonable fact finder would

8    have to conclude otherwise." It also should be noted that it

9    is plaintiff's burden through step four, including at the RFC

10    level, to demonstrate her impairments and the resulting

11    limitations that would affect her ability to perform basic

12    work functions.  The Commissioner of course bears the burden

13    at step five.

14          Plaintiff's contentions in this case can be more or

15    less boiled down, she complains of the failure to find

16    plaintiff's left knee as a medically determinable impairment,

17    and of the fact that several other of her conditions were not

18    found to be severe, including degenerative disc disease,

19    borderline personality disorder, and obesity.

20          Secondly, she challenges the evaluation of medical

21    opinions pursuant to the revised regulations that took effect

22    in 2017, including the opinions of Dr. Ewald, plaintiff's

23    podiatrist, various check-box forms that were lumped together

24    by ALJ Koennecke and discussed collectively, the opinion of

25    Dr. Gilbert Jenouri, a consulting examiner, and Dr. Abueg and

1    Dr. Kirsch, state agency consultants.

2          With regard to plaintiff's left knee impairment, at
3    step two of the sequential evaluation, a claimant must show
4    that he or she has a medically determinable impairment that
5    rises to the level of a severe impairment, 20 C.F.R. Section
6    404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  An impairment
7    fails to reach this threshold of severity where it does not
8    significantly limit your physical or mental ability to
9    perform basic work activities, which include the ability to
10   engage in exertional functions, to see, hear, speak,
11   understand, remember, and carry out simple instructions, use
12   judgment, respond appropriately to supervision, coworkers and
13   usual work situations, and deal with changes in a routine
14   work setting.  Undeniably, as plaintiff has argued, the step
15   two test is fairly de minimus and intended only to screen out
16   the truly weakest of cases.  The mere presence of an
17   impairment or disease, however, is not sufficient by itself
18   to render a condition severe.

19          The -- in terms of the left knee, I note that it
20   was not addressed clearly at step two in ALJ Koennecke's
21   discussion, and therefore one must assume it was not found to
22   be a medically determinable impairment which is defined as an
23   impairment resulting from anatomical, physiological or a
24   physical and mental -- or psychological abnormalities that
25   can be shown by medically acceptable clinical and laboratory

1    diagnostic techniques.  The regulation provides that a

2    physical or mental impairment must be established by

3    objective medical evidence from an acceptable medical source,

4    20 C.F.R. Section 404.1521.  Clearly plaintiff has complained

5    of bilateral knee pain.  She made complaints in 2018 and

6    2019, including at 624, 631 to 632 and 2066, and in 2020 she

7    complained that her pain in the left knee was worse, surgery

8    was discussed.  As the plaintiff points out, in July of 2020,

9    there was magnetic resonance imaging, or MRI, testing, the

10   results are at 2066 and 2070, they are signed by a physician,

11   Dr. Timothy Shepard.  Dr. Gilbert Jenouri, the consultative

12   examiner, diagnosed the plaintiff with bilateral knee pain,

13   that's at page 755.

14          So it appears that it was error to find that it was

15   not a medical determinable impairment or even to mention it.

16   And that of course is problematic.  As plaintiff has argued,

17   it is not harmless error necessarily, *Penny Lou S. v.*

18   *Commissioner of Social Security*, 2019 WL 5078603.  In that

19   case, Magistrate Judge Conroy from the District of Vermont in

20   October of 2019 pointed out that a finding of a condition not

21   being a medically determinable impairment can color the

22   subsequent sequential analysis.  In this case, the ALJ said

23   she has considered all medically determinable impairments,

24   severe and nonsevere, in assessing the RFC at page 18, so she

25   obviously did not consider plaintiff's left knee condition

1    which she found not to be a medically determinable

2    impairment.

3            The matter was raised in *Lorraine Michelle H. v.*

4    *Commissioner of Social Security*, 2022 WL 7285345 from the

5    Northern District of New York, Magistrate Judge Thérèse Wiley

6    Dancks, September 13th, 2022.  In that case she went on to

7    say that while migraine headaches were not found to be a

8    medically determinable impairment, they clearly were

9    considered throughout the course of the decision.  Do I still

10   have both counsel on the line?

11           MR. NORWOOD:  Yes, your Honor.

12           MS. HENDRICKSON:  Yes.

13           THE COURT:  Okay, I heard a ding and I wasn't sure

14   what it meant.

15           So clearly, that is potentially problematic, that

16   it was not found to be -- I'll call it an MDI.  However, I

17   didn't find, and I scoured the medical opinions and the

18   medical evidence, did not find any evidence of resulting

19   limitations on the ability to perform plaintiff's basic work

20   activities beyond those already reflected in the RFC.

21           On September 26, 2019, Dr. Jenouri found

22   plaintiff's gait to be normal and found no limitations in

23   walking, just a moderate limitation in standing long periods.

24   That's at 755.

25           On October 1, 2013, Physician's Assistant Michelle

1    Provost found no limitation in standing and walking, that's

2    at 1960.

3            On November 16, 2015, Dr. Matthew Cline, if I'm

4    reading my notes correctly, found only a moderate limitation

5    in walking and standing, that's at 1964, but that was in

6    anticipation of foot surgery which was to take effect -- or

7    to occur on November 26, 2015.  And there was an indication

8    that the condition would last one to three months and then

9    plaintiff could resume normal activities.

10            In May of 2016, Dr. Kamlesh Desai, an orthopedist,

11    found no limitation in walking and standing, that's at 1965

12    to 66.  Family Nurse Practitioner Maria Berry found no

13    limitation in walking and standing in October of 2017, that's

14    at 1970.

15            On October 28, 2018, Nurse Practitioner Berry found

16    no limitation in walking, 1974.  She did note, however, that

17    plaintiff cannot walk or stand for extended time.

18            Dr. Michael McClure on July 29, 2019 indicated

19    plaintiff presents for bilateral pain, worsened right knee,

20    x-ray unremarkable for left, that's at 813.  Gait normal,

21    full strength and range of motion in legs, that's at 810 to

22    813.

23            Dr. Abueg and Dr. Kirsch, the two state agency

24    physicians that were consulted, supported the RFC.  Both

25    indicated plaintiff can stand and/or walk for six hours in an

1    eight-hour day.  They noted only the back -- well, they noted

2    there was no medically determinable impairment as of

3    plaintiff's last date of insured status at 132 to 138, and

4    only a severe medically determinable impairment of the back

5    thereafter.

6          Nurse Practitioner Berry on December 27, 2019 found

7    that plaintiff had only moderate limitations in the ability

8    to walk and stand, that's at 1975 to 1976, which is not

9    inconsistent with light work, I will add.

10         So I don't find -- although this is a close case,

11   and I agree that *Penny Lou S.* makes the harmless error

12   doctrine potentially inapplicable in a case like this, it's

13   clear that the ALJ was obviously aware of plaintiff's left

14   knee pain, that's indicated at page 22.  I didn't find any

15   evidence that the left knee impairment would undermine the

16   RFC, and so while there may have been error, it would be, it

17   would be an exercise in futility in my view to remand this

18   matter and recognize left knee pain as a medically

19   determinable impairment.  It would not change the outcome.

20   And I'll note in that regard, in fairness to ALJ Koennecke,

21   plaintiff did not claim in her function report a left knee

22   issue as a basis for finding disability, that's at page 371.

23         Turning to the argument of not finding severe

24   impairments for those that were determined to be medically

25   determinable, with respect to the mental borderline

personality disorder, the ALJ clearly considered plaintiff's mental impairments, they were discussed at 17 to 19 of the Administrative Transcript, including borderline personality disorder.  She applied the special technique and found mild limitations in two of the four part B domains and no limitations in the other two.  Her determination is supported by the consultative report of Dr. Sara Long who examined the plaintiff.  It was not diagnosed by her at page 749.  It's also supported by Dr. J. Weitzen at 1959 and Dr. Kamin, 1017.  And I'll note that it is clear that state agency consultants can provide -- can supply substantial evidence to support a determination if they are supported in turn by substantial evidence.  *Woytowicz v. Commissioner of Social Security*, 2016 WL 6427787, from the Northern District of New York, October 5, 2016, report and recommendation of Magistrate Judge William Carter, was later adopted by Judge Glenn Suddaby on October 28, 2016 at 2016 WL 6426385.  I will take pause to note that it is true that in a, particularly in a mental health case, the opinions of nonexamining consultants are given a little bit less weight than someone who has treated or examined the plaintiff.  In this case, because it is consistent with Dr. Long who examined the plaintiff and also several of her treating therapists, however, I believe that it is appropriate to weigh those state agency consultative reports and give them credibility or credence.

1          I note that plaintiff's therapists do not opine to

2     more significant limitations, and plaintiff's activities of

3     daily living and her own function report do not contradict

4     the state agency consultants' findings.  So I find no error.

5     And again, if there was error, it was harmless because ALJ

6     Koennecke specifically stated she was considering all

7     impairments when formulating the RFC, both severe and

8     nonsevere.  And so because she went on to the rest of the

9     sequential analysis, there was -- if there was error, it was

10    harmless.  But I don't believe there was error.

11         With regard to bone spurs, ALJ Koennecke at page 17

12    explained why she rejected that as a severe impairment.  She

13    cited evidence which showed that after the December 2019

14    surgery, within six months plaintiff returned to normal.  I

15    do agree the decision could have been clearer as to the basis

16    and specifically whether or not her condition met the

17    durational requirement but if there was error, again, it was

18    harmless based on the assertion that ALJ Koennecke considered

19    all of plaintiff's medically determinable impairments.

20         Obesity was addressed at page 17 of the decision.

21    It was explained that there wasn't any evidence presented by

22    the plaintiff to show that her obesity imposed more

23    limitations than those resulting from her other impairments.

24    It is plaintiff's burden to show resulting limitations.  The

25    mere existence of a condition like obesity alone will not

1    suffice.  Again, if it was error, it was harmless based on

2    the statement that the ALJ considered the effects of obesity

3    in formulating her RFC at page 17.

4            Lumbar spine, the objective evidence, both MRI

5    testing results and x-rays, were largely unremarkable.  The

6    MRI in September of 2019 showed only a small disc protrusion

7    at L5-S1 and a moderate protrusion at L4-L5.  Once again, if

8    there was error, it was harmless.

9            Pivotal, as you know, to the determination of

10   disability is assessment of the plaintiff's residual

11   functional capacity or RFC, which is a finding of the range

12   of tasks he or she is capable of performing notwithstanding

13   his or her impairments.  An RFC ordinarily represents a

14   claimant's ability, maximum ability to perform sustained work

15   activities in an ordinary setting on a regular and continuing

16   basis, meaning eight hours a day for five days a week or an

17   equivalent schedule.  And of course an RFC is informed by

18   consideration of all of the evidence of record and must be

19   supported by substantial evidence.

20           In this case, the RFC includes the ability to

21   perform light work, which is defined by regulation in 20

22   C.F.R. Section 404.1527, and also Social Security Ruling

23   83-10.  Essentially when it comes to standing or walking,

24   which seems to be the primary focus of plaintiff's arguments,

25   it requires the ability to intermittently stand or walk for a

1    total of six hours in an eight-hour workday.  *Poupore v.*

2    *Astrue*, 566 F.3d 303, Second Circuit 2009, and also *Lisa B.*

3    *v. Commissioner of Social Security*, 2022 WL 6735016, Northern

4    District of New York, October 11, 2022.

5              In this case the RFC is supported by the opinions

6    of Dr. Abueg, Dr. Kirsch, and Dr. Jenouri.  I note that

7    Dr. Jenouri did find moderate limitation, however, case law

8    is clear -- that he found moderate limitation in standing

9    long periods, that's at 755.  Case law is clear, however,

10   that moderate limitations in the ability to stand, sit, and

11   perform other activities is not inconsistent with light work.

12   *White v. Berryhill*, 753 F.App'x 80 from the Second Circuit,

13   February 7, 2019.

14             So I believe the RFC is supported, including by the

15   many medical opinions in the record, which leads me to

16   evaluation of those medical opinions.  And there are many,

17   many in the record.  Frankly, there's something for everyone

18   in the medical opinions, but the vast majority of them

19   actually support the RFC, and that includes from treating

20   sources.  Those opinions are in varying degrees of

21   specificity.  When it comes to evaluation of medical

22   opinions, under the new regulations, applicable to

23   applications filed after March 27, 2017, the Commissioner no

24   longer defers or gives any specific evidentiary weight,

25   including controlling weight, to medical opinions, but rather

1    will consider those opinions and whether they are persuasive

2    by primarily considering whether they are supported by and

3    consistent with the record in the case.  20 C.F.R. Section

4    404.1520(c) and 20 C.F.R. Section 416.920c.  The ALJ must

5    articulate in his or her determination as to how persuasive

6    he or she finds all of the medical opinions and explain how

7    he or she considered supportability and consistency of those

8    opinions.

9              Plaintiff first complains of the treatment of,

10   and -- first complains of the treatment of opinions, or I

11   should say notes provided by Dr. Brandon Ewald, plaintiff's

12   treating podiatrist.  On December 27, 2019, Dr. Ewald

13   performed surgery on the plaintiff and filed a report that is

14   located at 1740 to 1742 of the Administrative Transcript.  In

15   that report, he states the following:  "Stable to home,

16   non-weight bearing and posterior splint, leave bandage clean,

17   dry and intact until first postoperative visit."  On

18   January 8, 2020, he provides a statement of employability in

19   which he concludes that plaintiff is very limited in walking

20   and standing.  That's at page 1979 and 1980.  On January 23,

21   2020, at page 1827, he provides a note addressed to "To Whom

22   It May Concern," stating simply, "I will ask that she," the

23   plaintiff, "be out of work 1/24/20."

24             On -- so of those, the only one that constitutes a

25   medical opinion, which is defined in the regulations as a

1    statement from a medical source about what you can still do

2    despite your impairments and whether you have one or more

3    impairment-related limitations or restrictions in various

4    specified abilities, including meeting the physical demands

5    of work activities, 20 C.F.R. Section 404.1513, the only one

6    of those three that constitutes an opinion, a medical opinion

7    is the January 8, 2020 opinion.  The administrative law judge

8    discussed it and found it less persuasive, because in her

9    view, the evidence, including Dr.Ewald's notes, suggested

10   that the condition was temporary and was related to the

11   surgery that's at page 23.  As confirmed by statements on

12   March 13, 2020, that's 2005, 2008, and June 5, 2020, that's

13   at 2009 to 2012, indicating plaintiff was pleased with the

14   results of the surgery and resumed normal activities.  Read

15   as a whole, I am unable to say that the ALJ did not properly

16   consider consistency and supportability of Dr. Ewald's

17   opinions.

18          Next, plaintiff raises issues concerning the

19   various check-box forms.  There were many.  The salient ones

20   that I found include from Physician's Assistant Michelle

21   Provost, October 1, 2013, 1959, 1960, who found no

22   limitations in plaintiff's ability to walk and stand;

23   Physical Therapist Daniel Downs, it is undated, appears at

24   1961 to 1962, there were no limitations physically noted;

25   Licensed Master Social Worker Vincent Nucero from

1   November 13, 2017, that appears at 1971 to 1972, finding

2   moderate limitation in four mental areas; Dr. Kamlesh Desai,

3   an orthopedist, from May 3, 2016, that's at 1965 to 1966,

4   finding no limitation in plaintiff's ability to walk and

5   stand; Dr. Matthew Cline from November 16, 2015, 1963 to

6   1964, finding moderate limitations in the ability to walk and

7   stand but noted that after her procedure she would likely be

8   able to return to full activity, the procedure being the

9   November 26, 2015 anticipated surgery.  There are also

10  several from Nurse Practitioner Berry.  One from October 7,

11  2017, 1969, 1970 with no limitations noted to walk and stand;

12  October 28, 2018, 1973 to 1974, no limitations in walking but

13  cannot stand or walk for any extended time; and December 27,

14  2019, that's at 1975, 1976, moderate limitation in walking

15  and standing, cannot stand for any length of time.  The only

16  one that was addressed by the ALJ was the December 27, 2019

17  opinion, that's at page 23.  These were grouped together and

18  summarily discounted as being in check-box forms, that's at

19  page 23, because they were based solely on plaintiff's

20  subjective complaints and inconsistent with the record.

21          I recognize fully that the Second Circuit has said

22  that the fact alone that a form is provided by a treatment

23  provider or someone else on a check-box form without any

24  citation to supporting evidence alone is not a sufficient

25  basis to reject check-box forms, *Colgan v. Kijakazi*, 22 F.3d

1    353 from January 22, 2022.  However, A, these are not very

2    useful because most of them don't have any treating

3    relationship with the -- or I'm sorry, don't have extended

4    treatment notes in the record that the ALJ could look to to

5    determine whether those check-box forms are supported by

6    findings or not.  However, I don't find that any of them are

7    inconsistent with the RFC finding.  So if there was error, it

8    was harmless.

9            Dr. Gilbert Jenouri gave an opinion, he was a

10   consultative examiner, that was discussed, that was -- the

11   report was issued on September 26, 2019 at page 752 to 757.

12   It, as I indicated previously, suggested only a moderate

13   limitation or restriction in standing long periods.  It was

14   addressed by the administrative law judge at page 23 and

15   found to be less persuasive.  I'm not sure it's totally

16   inconsistent with the RFC but in any event, I don't find any

17   error in her assessment of Dr. Jenouri's opinion when the

18   decision is read as a whole.

19           The state agency consultants who opined concerning

20   physical abilities of the plaintiff, Dr. Abueg on October 10,

21   2019, 132 to 137, and that was for the period predating, or

22   as of December 31, 2018, the date of last insured status, he

23   found no medically determinable impairments.  He also issued

24   an opinion on October 10, 2019, that's at 119 to 131, that

25   supports the residual functional capacity.  Dr. Kirsch on

1    February 7, 2020, on reconsideration, found that as of

2    12/31/18 there was no medically determinable impairment, 158

3    to 173.  He issued another opinion on February 7, 2020, 141

4    to 157, supporting the RFC.  They were both addressed at

5    page 23 by the ALJ and found to be more persuasive.

6         As I indicated previously, it is proper for an ALJ

7    to rely on the opinions of a state agency consultant.

8    Plaintiff argues that those may have been stale; however, I

9    didn't see any evidence of a significant deterioration of

10   plaintiff's physical condition after those opinions were

11   rendered that would have undermined their ability to serve as

12   substantial evidence to support the RFC.

13        So in summary, it's clear that this decision could

14   have been written better, there are certain aspects of it

15   that are potentially problematic, but my conclusion is in

16   most instances, if there was error, it was harmless error,

17   and I am unable to say that no reasonable fact finder -- I'm

18   sorry, put another way, a reasonable fact finder would have

19   to conclude other than the way in which the administrative

20   law judge did.  I think when her decision is read as a whole,

21   the court can glean why she weighed the medical opinions of

22   record the way she did, and it seems to me that the plaintiff

23   is simply asking the court to weigh them differently --

24   something which is clearly not the court's function.  So I

25   will grant judgment on the pleadings to the defendant and

1    order dismissal of plaintiff's complaint and the entry of

2    judgment to that effect.

3              Thank you again for excellent presentations, I hope

4    you have a wonderful Memorial Day weekend.  Thank you.

5              MS. HENDRICKSON:  Thank you, your Honor.

6              MR. NORWOOD:  Thank you.

7                   (Proceedings Adjourned, 3:20 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4           I, JODI L. HIBBARD, RMR, CRR, CSR, Federal

 5      Official Realtime Court Reporter, in and for the

 6      United States District Court for the Northern

 7      District of New York, DO HEREBY CERTIFY that

 8      pursuant to Section 753, Title 28, United States

 9      Code, that the foregoing is a true and correct

10      transcript of the stenographically reported

11      proceedings held in the above-entitled matter and

12      that the transcript page format is in conformance

13      with the regulations of the Judicial Conference of

14      the United States.

15

16                        Dated this 28th day of May, 2024.

17

18

19                        /S/ JODI L. HIBBARD
                          _____
20                        JODI L. HIBBARD, RMR, CRR, CSR
                          Official U.S. Court Reporter
21

22

23

24

25
```

JODI L. HIBBARD, RMR, CRR, CSR
(315) 234-8547